IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SHIRLEY A. PETERSON,

        Plaintiff,

v.                                  Civil Action No. 1:04CV76

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
            Defendant.

## MEMORANDUM, OPINION AND REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I.  Introduction

A.    <u>Background</u>

    Plaintiff, Shirley A. Peterson, (Claimant), filed her Complaint on April 22, 2004 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on June 23, 2004.[2] Claimant filed her Motion for Summary Judgment and Brief in Support Thereof on July 28, 2004 and August 3, 2004 respectively.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on August 30, 2004.[4] Claimant filed her Reply to Commissioner's Response on September 13, 2004.[5]

B.    <u>The Pleadings</u>

---

[1] Docket No. 1.

[2] Docket No. 5.

[3] Docket Nos. 11 and 12.

[4] Docket No. 13.

[5] Docket No. 14.

1.      <u>Claimant's Motion for Summary Judgment and Brief in Support Thereof</u>.[6]

2.      <u>Commissioner's Motion for Summary Judgment and Brief in Support Thereof</u>.[7]

3.      <u>Claimant's Reply to Commissioner's Motion for Summary Judgment</u>.[8]

C.      <u>Recommendation</u>

1.      I recommend that this case be REMANDED for the ALJ to properly consider

Claimant's credibility regarding her subjective complaints of pain. Also, I Recommend that Claimant's Motion for Summary Judgment be DENIED and that Commissioner's Motion for Summary Judgment be GRANTED on the following issues Claimant's statements alone are not enough to establish a physical impairment; the Appeals Council explanation was adequate; Claimant's subsequent award of disability is irrelevant to this case; and the ALJ determined that Claimant is limited to light work.

## II. Facts

A.      <u>Procedural History</u>

On September 8, 1995 Claimant filed her first application for Social Security Income (SSI) payments alleging disability since September 1, 1994. The application was ultimately denied. On May 19, 1996 Claimant filed her second application for (SSI) payments against alleging disability since September 1, 1994. The application was denied initially and on reconsideration. The

---

[6] Docket Nos. 11 and 12.

[7] Docket No. 13.

[8] Docket No. 14.

Claimant's request for a hearing was denied due to late filing. The Claimant appealed the dismissal to the appeals counsel which vacated the dismissal order and remanded the case to the hearing office.

On October 14, 1998 Claimant filed for (SSI) payments alleging disability since September 1, 1994. The application was denied initially and on reconsideration. The 1997 and 1998 applications were consolidated for one hearing and decision. A hearing was held on January 27, 2000 before an ALJ. The ALJ's decision dated August 22, 2000 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on February 21, 2004. This action was filed and proceeded as set forth above.

B.    <u>Personal History</u>

Claimant was 53 years old on the date of the January 27, 2000 hearing before the ALJ. Claimant has the equivalent of a high school education and past relevant work experience as a purchasing-inventory clerk.

C.    <u>Medical History</u>

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability September 1, 1994 - August 22, 2000:

**David Tuel, M.D., 1/13/97, Tr. 292**
•      Post-traumatic arthrosis of the right knee secondary to her previous trauma. I think she needs to lose weight and start an exercise program and take anti-inflammatories if tolerated.

**William M. Almasy, M.D., 12/22/96, Tr. 294**
•      X-ray  Right hip - negative right hip.
•      Right knee - advanced degenerative.
•      Changes of the knee - Chondrocalcinosis and Osteochrondromatosis noticed.

**D.L. Huffman, 12/19/96, 295-296**
•      This 50 year old has chronic low back pain which I suspect is of an arthritic nature

probably stemming from facet joint degenerative changes. There are no signs of nerve root impingement and I am not concerned about disc herniation. This odd sensation travelling up the spine is hard to characterize in terms of cause but does not appear to be an ominous sign. We will obtain lumbar CT to get a better degree of degeneration. At present, I would state she is not a surgical candidate. I do not see a need for EMG.

**Timothy Hetzer, M.D., 12/5/96, Tr. 298**
•     Mammogram, no malignant changes are identified.

**Fairmont General Hospital, 5/9/97, Tr. 305**
DISCHARGE DIAGNOSES:
AXIS  I:       Alcohol dependence, major depression.
AXIS II:       No diagnosis.
AXIS III:      Non-insulin dependent diabetes mellitus and hypertension.
AXIS IV:      The patient is currently not employed. She is separated from her third husband since 1994 and has three sons and one daughter.
AXIS V:       GAF is 50.

**Ahmed Aboraya, M.D., 4/20/97, Tr. 311**
AXIS I:       Alcohol dependence. Major depression with suicide ideation.
AXIS II:      Deferred.
AXIS III:     Hyperglycemia, Hypercholesterolemia. Hypertension.

**Eugenio Menez, M.D., 4/23/97, Tr. 313**
•     Hyperglycemia - multifactorial.
•     History of hypertension.
•     Hypercholesterolea.

**Peggy Wolfe, M.A., 4/23/97, Tr. 318**
•     Alcohol dependence and major depression.

**William Hirsch, M.D., 4/20/97, Tr. 325**
•     No abnormality of heart or lungs is detected.

**Mental Residual Functional Capacity Assessment**
**James Capage, Ph.D., 11/24/97, Tr. 327-328**
•     Substance addiction.
•     Affective disorder.
•     No evidence of limitation in 19 of 20 categories.
•     Moderately limited in ability to sustain ordinary routine without special supervision.

**Physical Residual Functional Capacity Assessment**
**Fulvio [illegible], M.D., 7/22/97, Tr. 331-338**
PRIMARY DIAGNOSIS:       Arthritis of the right knee.

Exertional Limitations: Occasionally 20 lbs., frequently 10 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:           All occasionally.
MANIPULATIVE LIMITATIONS:  None established.
VISUAL LIMITATIONS:             None established.
COMMUNICATIVE LIMITATIONS: None established.
Environmental limitations: Avoid concentrated exposure to extreme cold, extreme heat and hazards.

**Psychiatric Review Technique**
**James Capage, Ph.D., 11/24/97, Tr. 339-347**
•       RFC assessment necessary.
•       Affective disorder depression.
•       Substance Addiction Disorder present.
•       "B" Criteria - slight restrictions daily living, slight difficulties social functioning, seldom deficiencies of concentration, once or twice episodes of deterioration.

**WVU Hospital, 7/22/97, Tr. 349**
**Graded Exercise Summary**
•       Exercise stress test with myocardial perfusion study.  Normal exercise portion. EKG response to exercise was non-ischemic. Test terminated due to achievement of target heart rate and  leg fatigue. Both chronotropic and hemodynamic responses to exercise were normal.  No significant arrhythmia occurred during study.  Myocardial perfusion portion per radiology.

**WVU Hospital, 7/22/97, Tr. 350**
**Myocardial Perfusion Scan**
•       Normal myocardial perfusion imaging study with no evidence of myocardial ischemia.

**Physical Residual Functional Capacity Assessment**
**L. Dale Simmons, M.D., 11/18/97, Tr. 351-358**
Exertional Limitations: Occasionally 20 lbs., frequently 10 lbs., stand and walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:                    None established.
MANIPULATIVE LIMITATIONS:            None established.
VISUAL LIMITATIONS:                      None established.
COMMUNICATIVE LIMITATIONS:         None established.
Environmental Limitations: Unlimited, except avoid concentrated exposure to extreme cold and extreme heat.

**WVU Hospital Emergency Room, 12/27/97, Tr. 360**
•       Right patellar Sprain.  S/P Fell.
•       Arthritic changes to the right knee.
•       Chondrocalcinosis of the right knee.

**Physician Office Center**
**5/20/98, Tr. 365**
- X-rays.  The results of her MRI show a medical meniscal tear.  The patient says that her symptoms are resolving and she has been feeling better.

**Physician Office Center**
**5/02/98, Tr. 366**
- X-rays.  X-rays show mild degenerative changes in all compartments of her knee.

**WVU Hospitals**
**Radiology Report, 5/12/98, Tr. 367**
- Clearage tear involving the posterior horn of the medial meniscus.

**WVU Hospitals**
**Radiology Report, 5/12/98, Tr. 368**
- Type II-B degenerative changes with possible associated tear involving the anterior horn or the lateral meniscus.
- Knee effusion.
- Degenerative changes involving the medial and lateral compartments.
- Cystic structure within the posterior aspect of the tibial plateau which may represent an intraosseous ganglion or a subchondral cyst associated with degenerative disease.

**WVU Hospitals**
**Mammogram, 11/11/98, Tr. 371**
- There is no mammographic evidence of malignancy.

**University Health Associates, 9/3/98, Tr. 373**
ASSESSMENT/PLAN: Allergic rhinitis.  We refilled her Beconase.
  - Hypertension.  Will continue Zestoretic and refills were given.
  - Diabetes mellitus.  Will continue Glucophage and recheck a hemoglobin A1-C in about three months at the patient's annual examine.
  - Achilles tenosynovitis.  This is improving and the patient is to take Naprosyn only as needed.  She does take Soma occasionally and was given a refill for this.
  - Depression.  Will give her refills on Prozac to take 40 mg a day as this has been more helpful than Wellbutrin in the past.
  - Smoking cessation.  Currently the patient is not ready to quit and we will readdress it at a future visit.

**WVU Hospitals, Cytopathology Consultation, 5/29/98, Tr. 381**
- Vaginal cytologic material (corretional).
- Satisfactory for interpretation.  Within normal limits.

**WVU Hospitals Radiology Report, 3/10/98, Tr. 385**

- Normal myocardial perfusion imaging study with no evidence of myocardial ischemia.

**WVU Hospitals, Graded Exercise Summary, 3/10/98, Tr. 386**

[illegible] view stress test.
- Significant right knee pain.
- No chest pain.
- No shortness of breath.
- No arrythemia.
- No significant changes.
- Symptom negative and EKG negative.
- Nuclear results [illegible] Radiology.

**Chestnut Ridge Hospital, 1/18/99, Tr. 398**

AXIS I: Major depressive disorder status post suicide attempt. Dysthymia. Alcohol dependence.
AXIS II: Deferred.
AXIS III: Status post drug overdose. Hypertension. Diabetes mellitus. Status post total abdominal hysterectomy.
AXIS IV: History of depression.  Poor social support.
AXIS V:  Global Assessment of Functioning: 20 on admission and 70 to 80 on discharge.
DISPOSITION: The patient is to go to Alcoholics Anonymous and Narcotics Anonymous meetings.  She is discharged today to Chestnut Ridge Day Hospital.

**WVU School of Medicine, 1/15/99, Tr. 406**

- In conclusion, the results of this neuropsychological evaluation revealed that this patient is experiencing some mild changes with her cognitive functioning related to processing, sustained attention and memory retrieval.  These deficits are fairly mild given her history and likely a product of both her alcohol dependence as well as her significant depression. She could benefit from cues to enhance her recall and maintain her focus.

**Charles M. Paroda, D.O., 2/8/99, Tr. 417**

- Chronic and acute low back pain.
- Arthritis, stable.
- Non-insulin-dependent diabetes mellitus, stable.
- Chest pain, etiology unknown.
- Depression, by history.

**Eli Rubenstein, M.D., 2/8/99, Tr. 417**

X-Ray Report - RIGHT KNEE: On the right side there are marked degenerative changes of the posterior patella and the patella.  There are calcifications and irregularity of the posterior articular surface of the tibia which has multiple cystic change in its proximal portion.  There is some calcification along the lateral compartment of the knee joint.
LEFT KNEE: The left knee shows minimal hypertrophic lipping along the medial aspect of the epicondylar surface of the femur.  The patella shows slight degenerative changes.
IMPRESSION: Rather marked degenerative arthrosis of the right knee.  Slight degenerative

arthrosis of the left knee.
LUMBAR SPINE: There is normal alignment of the lumbar spine.  There is no evidence of fracture or dislocation.  The lumbar interspaces are normal.  There is no compression or appendi defect.  The sacroiliac joints are normal.
IMPRESSION:      Normal lumbar spine.


**Residual Physical Functional Capacity**
**Vince Petrer?, 2/22/99, Tr. 420-427**
PRIMARY DIAGNOSIS:              Chronic acute low back pain.
SECONDARY DIAGNOSIS:          Arthritis.
Exertional Limitations: Occasionally 50 lbs., frequently 25 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:        All frequently.
MANIPULATIVE LIMITATIONS:  None established.
VISUAL LIMITATIONS:              None established.
COMMUNICATIVE  LIMITATIONS: None established.
Environmental Limitations: Unlimited, except avoid concentrated exposure to extreme cold.


**William Fremouw, Ph.D., 3/8/99, Tr. 428-430**
I.Q.        Verbal 109,                      Performance 98,               Full Scale 104
DIAGNOSTIC IMPRESSION:
AXIS I:       296.32        Major depressive recurrent-moderate with medications.
              303.90        Alcohol dependence, in early remission.
AXIS II:                      No diagnosis.
AXIS III:                    Arthritis, high blood pressure.

**Psychiatric Review Technique**
**Joseph Kuzniar, Ed.D., 3/22/99, Tr. 432**
•        Residual Functional Capacity Assessment necessary.
•        Affective disorder; major depression.
•        Substance addiction disorders in remission.
•        "B" Criteria.   Slight restrictions on daily living and social functioning, seldom deficiencies of concentration, three or more episodes of deterioration.

**Mental Residual Functional Capacity Assessment**
**Joseph Kuzniar, Ed.D., 3/22/99, Tr. 441-444**
•        No evidence of limitation in 8 of 20 categories.
•        Not significantly limited in 10 of 20 categories.
•        Moderately limited in two categories.


**Paul Clausell, M.D., 3/2/99, Tr. 452-454**
AXIS I: 296.33 Major Depressive Disorder, Chronic with Suicidal Features at times. 300.4 Dysthymic Disorder, Early Onset.
AXIS II:       None.

AXIS III:        Diabetes, Hypertension.
AXIS IV:        History of substance dependence. History of major depression.
AXIS V:         GAF: 55.

**Psychiatric Review Technique, 7/15/99, Tr. 455**
- Impairments not severe.
- Affective Disorder MDD.
- "B" Criteria - No restrictions daily activities or difficulties in social functioning. Seldom deficiencies of concentration. Once or twice episodes of deterioration.

**Physical Functional Capacity Assessment, 8/2/99, Tr. 464-471**
PRIMARY DIAGNOSIS:            Right knee pain, S/Post right knee injury (1975).
SECONDARY DIAGNOSIS:         Arthritis of knees, worse in right.
Exertional Limitations: Occasionally 20 lbs., frequently 10 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:        All occasionally.
MANIPULATIVE LIMITATIONS:  None established.
VISUAL LIMITATIONS:          None established.
COMMUNICATIVE LIMITATIONS: None established.
Environmental Limitations: Unlimited, except avoid concentrated exposure to heat and hazards.

**Charles M. Paroda, D.O., 10/10/99, Tr. 472-478**
- Non-insulin-dependent diabetes mellitus, stable,
- Chest pain, etiology unknown, probably non-cardiac.
- Right knee pain.
- Posttraumatic arthritis.
- Chronic and acute low back and sacroiliac strain.

**Medical Assessment of Ability to do Work-Related Activities (Physical), Tr. 479-481**
Lifting/carrying occasionally 25 lbs., frequently 5 to 20 lbs., standing/walking 6 to 8 hours, without interruption 1-2 hours.
POSTURAL LIMITATIONS:        All occasionally.
PHYSICAL FUNCTIONS:          None affected.
ENVIRONMENTAL
RESTRICTIONS:                None affected.

**William Fremouw, Ph.D., 11/15/99, Tr. 482-487**
I.Q.        Verbal 110        Performance 92        Full Scale 102
DIAGNOSTIC IMPRESSION: (DSM-IV):
AXIS I:        296.32        Major depression recurrent-moderate.
AXIS II:                     No diagnosis.
AXIS III:                    Arthritis, blood pressure and diabetes.

**Medical Assessment of Ability to do Work-Related Activities**

**(Mental)       11/15/99, Tr. 488-490**
- Making occupational adjustments:    1 good, 3 fair, 4 poor.
- Making performance adjustments:    3 good.
- Making personal-social adjustments:  3 fair, one poor.

**University Health Associates, 11/18/99, Tr. 493**
- Coronary artery disease.
- Hypertension.
- Hyperlipidemia.
- Diabetes.
- History of bipolar affective disorder.

**Adult Echocariographic Report, 1/14/00, Tr. 499**
- Normal left ventricular systolic function.
- Mild mitral regurgitation.
- Mild tricuspid regurgitation.

**WVU Hospital, 11/12/99, Tr. 503**
- There is no mammographic evidence of malignancy.

**WVU Hospital, 10/24/99, Tr. 508**
- Coronary artery disease (reported myocardial infarction).
- Hypertension.
- Diabetes mellitus.
- Hyperlipidemia.

**WVU Hospital, 4/23/99, Tr. 530**
- Lumbar spine sprain/strain.
- History of ethanol abuse.
- Depression.
- Non-insulin-dependent diabetes mellitus.
- Hypertension.

**WVU Hospital, 7/9/99, Tr. 539**
- No evidence for acute traumatic injury to the right knee.

**WVU Hospital, 5/10/99, Tr. 541**
- Some mild degenerative changes without focal disc bulge, herniation, central canal or foraminal encroachment at the L4-5 and L5-S1 levels. [illegible] facet degenerative change is present at the L5-S1 level.

**Healthworks, 1/26/99, Tr. 544**
- DIAGNOSIS: Low back pain, right knee pain.

D.    <u>Testimonial Evidence</u>

<u>1. Claimant</u>

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 582-83, 586-87):

Q    All right.  And describe what problems you have with your back.

A    My back hurts.  It's actually in my hip, I didn't realize until I went to the therapy, or to the pain clinic, management.  It's pinching, I guess, my sacroiliac nerve, or sciatic nerve.  And it causes my leg to go numb and hurt within the bone in my leg, it causes my back to go numb and I have spasms that go through my back.

Q    And this radiates down into your leg or is the leg separate?

A    No, it's - - the pain's different, but it's usually at the same time.  It radiates, yes, I'm sorry, it does radiate down through the bone in my leg.

Q    And is that both legs or - -

A    It's, basically, the right leg.

                    *            *            *

Q    Let's go to the knee problem.  You've had long term problems with your right knee?

A    Right.

Q    And we have a lot of - - well, you've had surgery and the - - I show a media meniscus tear a couple years ago.   Have you had any further surgery on your knee?

A    No, it was recommended or it was suggested, and I was told to think about it.  But by the time I decided, yeah, go ahead and have it done, it was when my medical card was cancelled again.  So I have to still go back through the process of getting back into the

orthopedic specialist to get it done.

Q        What problems do you have with your knee at this time?

A        Well, they took x-rays and they said that my knee is the knee of a 75-year-old woman, and that I needed to have - - I have, I guess they scrape the bones and try to get a lot of the stuff off.  But I also have a cyst that's in the back of my leg and I did wear a brace, but I can't wear the brace because it creates so much pressure on my knee.  I can't - - it hurts too bad to be able to wear it.

Q        So, how, how does this effect your activities?

A        I can't do any things like - - it's hard to shop, it's hard to, you know, just do the exercises that I need to do.  Just by the walking.  I was into the - - when I went to the clinic, or went over to the therapy place, they, they had me doing exercises and all of a sudden my leg became so painful that I couldn't walk on it for a few days.  And I had to go back through the doctor, get another appointment to try to find out what was wrong.

## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 601-02):

Q        All right.  Let me ask you, then, to assume a hypothetical individual of the claimant's age, educational background and work history.  Assume that the person is able to perform light work and requires a sit/stand option.  Could not climb ladders, ropes or scaffolds, but would be able to perform all other postural maneuvers frequently, or occasionally, make that occasionally.  And should work in a low stress environment.  In your opinion, would there be any jobs in the regional or national economy that such a person could perform?

A       Yes, Your Honor.  That hypothetical individual, I believe, could function in some small parts assembly work.  The total number in the light category is 1.7 million and 18,000 regionally.  But I would reduce those numbers by half because some of those are more fast-paced and would have more stress associated with them.  And the other possibility would be general office clerk, light, 1.2 million nationally, 12,000 regionally.

Q       All right.  Then let me ask you to take first hypothetical and reduce the exertional level to sedentary and retain the other limitations.  Would there be any work which such a person could perform?

A       Yes, Your Honor.  The - - that hypothetical individual could function as an order clerk, sedentary, 480,000 nationally, 2,300 regionally.  Or a ticket seller, sedentary, 219,000 nationally and 1,600 regionally.

E.       Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

• Can operate a computer.  (Tr. 576).

• History of alcohol abuse.  (Tr. 580).

• Goes grocery shopping.  (Tr. 587).

• Vacuums, cooks, does the laundry and housecleaning.  (Tr. 588, 597).

• Reads, watches television.  (Tr. 594).

• Can lift a sack of potatoes or sugar.  (Tr. 595).

## II.  The Motions for Summary Judgment

A.      Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred by failing to properly analyze Claimant's credibility in regards to her subjective complaints of pain. Also, Claimant maintains that her consistent written and oral statements about her functional limitations support a finding that she is unable to perform the requirements of light exertional work. Additionally, Claimant asserts that the Appeals Council erred when it failed to provide some reason for denying Claimant's request for review. Also, Claimant maintains that Dr. Maroon's subsequent opinion should be persuasive because Claimant was subsequently awarded benefits. Lastly, Claimant maintains that the Vocational Guidelines direct a finding that Claimant is disabled.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ properly analyzed Claimant's credibility. Also, Commissioner asserts that the additional evidence was not new or material. Lastly, Claimant maintains that the Vocational Guidelines do not direct a finding that Claimant is disabled.

B.      The Standards.

1.      Summary Judgment.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party

opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.      Judicial Review.   Only a final determination of the Commissioner may receive judicial review.  See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.      Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.      Social Security - Medically Determinable Impairment.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.  42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.      Disability Prior to Expiration of Insured Status- Burden.  In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6.      Social Security - Standard of Review.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. <u>Social Security - Substantial Evidence - Defined</u>. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. <u>Social Security - Sequential Analysis</u>. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. <u>Rhoderick v. Heckler</u>, 737 F.2d 714-15 (7th Cir. 1984).

10. <u>Social Security - Claimant's Credibility - Pain Analysis</u>. The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an

impairment capable of causing the degree and type of pain alleged.  Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

11.    Social Security - Subjective Complaints of Pain.  Claimant's statements alone are not enough to establish that there is a physical or mental impairment.  20 C.F.R. §§ 404.1528(a), 416.928(a).  Claimant's statement about her pain or other symptoms will not alone establish that claimant is disabled.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof. Id. at 592 (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

12.    Appeals Council's Review of New Evidence.  The Fourth Circuit Court of Appeals has decided, albeit in unpublished opinions, that the Appeals Council does not need to engage in a detailed analysis of new evidence.  Freeman v. Halter, No. 00-2471, 2001 WL 847978, at *2 (4th Cir. July 27, 2001); Hollar v. Comm'r, No. 98-2748, 1999 WL 753999, at *2 (4th Cir. Sept. 23, 1999). This Court affords more weight to unpublished Fourth Circuit Court of Appeals decisions then to published District Court decisions.

13.    Subsequent Award of Disability.  The role of the District Court is to address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998).  The District Court's role is to review "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision."  Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999).

C.      Discussion

## 1. Credibility

Claimant asserts that the ALJ erred when he determined that Claimant's allegations of pain are only partially credible.  Commissioner counters that the ALJ properly determined Claimant's credibility.

The determination of whether a person is disabled by pain or other symptoms is a two step process.  First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged.  Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

The ALJ stated that "[t]he medical evidence documents that the claimant has back and knee impairments that could reasonably be expected to produce back and knee pain." (Tr. 31).  However, the ALJ's next sentence was "[w]hile the claimant has back and knee impairments that could give rise to pain especially on prolonged standing, walking and sitting, the claimant's allegations of pain that would require her to lie down for 15 minutes at a time after only 5 minutes of housework are not credible." (Tr. 31).   The first prong of Craig requires the ALJ to expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the *degree* and *type* of pain alleged.  Craig v. Chater.  The ALJ's second statement shows that the ALJ did not think Claimant had an impairment capable of causing the degree and type of pain alleged. The ALJ then considered the credibility of Claimant's subjective allegations of pain in light of the entire record.  Craig v. Chater.  The ALJ found that "[o]ther than taking medications, the claimant's

other treatment modalities, including injections, the use of a TENS unit, and physical therapy, has been used only sporadically." (Tr. 31). However, Claimant maintains that she followed the recommendations of her treating physicians. Also, Claimant's Medicaid card was discontinued in August 1999 and when she got it back Claimant had to go back to her primary care physician who then referred her to an orthopedist who recommended her to a physical therapist of pain treatment. (Tr. 584-85). Also, the ALJ stated that Claimant's "allegation that she can perform no lifting is not supported by the evidence considered as a whole. To do cooking and laundry the claimant would have to be able to do some lifting." (Tr. 31). The ALJ was mistaken. The Claimant admitted that she could do some lifting.

> Q    In your doing housework or grocery shopping, and so forth,
>      what's about the heavies weight that you would lift, say, to
>      put into a grocery cart?
>
> A    A gallon of milk
>
> Q    Do you buy potatoes or sugar?
>
> A    Yeah, and flour. Yeah, that's - -
>
> Q    That's about the - - what size of the package you get?
>
> A    Five pounds.

(Tr. 595).

The Claimant admitted that she can lift 5 pound, and a gallon of milk. (Tr. 595). Therefore, I recommend that this case be Remanded for the ALJ to properly consider Claimant's credibility consistent with the fact that she can do some lifting.

<u>2. Claimant's Statements</u>

Claimant asserts that her consistent written and oral statements about her functional limitations support a finding that she is unable to perform the requirements of light exertional work. Commissioner did not respond to this issue.

Claimant's statements alone are not enough to establish that there is a physical or mental impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a). Claimant's statement about her pain or other symptoms will not alone establish that claimant is disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

The effect of Claimant's statements depend on the ALJ's credibility determination. However, Claimant's statements alone are not enough to establish an impairment. As discussed above, this case should be Remanded for the ALJ to properly determine Claimant's credibility.

### 3. New Evidence

Claimant asserts that the Appeals Council erred when it failed to provide some reason for determining that the subsequently admitted evidence provided no basis for changing the ALJ's decision. Commissioner counters that the additional evidence was neither new or material.

The Fourth Circuit Court of Appeals has decided, albeit in unpublished opinions, that the Appeals Council does not need to engage in a detailed analysis of new evidence. Freeman v. Halter, No. 00-2471, 2001 WL 847978, at *2 (4th Cir. July 27, 2001); Hollar v. Comm'r, No. 98-2748, 1999 WL 753999, at *2 (4th Cir. Sept. 23, 1999). This Court affords more weight to unpublished Fourth Circuit Court of Appeals decisions then to published District Court decisions.

The Appeals Council stated that they considered the additional evidence and found that it did not provide a basis for changing the ALJ's decision. (Tr. 10-11). The Appeals Council explanation was adequate. Therefore, the Appeals Council did not err.

Claimant also maintains that the additional evidence which is the medical opinion of Dr. Maroon should be persuasive because Claimant was subsequently awarded benefits.

The role of the District Court is to address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The District Court's role is to review "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1279 (11th Cir. 1999).

This court is limited to the period of alleged disability in reviewing the ALJ's decision and may not be influenced by a subsequent award of benefits. Therefore, Claimant's subsequent award of disability is irrelevant to this case.

<u>4. Medical Guidelines</u>

Claimant maintains that if she is limited to sedentary work then the medical guidelines deem her disabled. Commissioner counters that Claimant is not limited to sedentary work.
The ALJ determined that Claimant is limited to light work. Therefore, Claimant's argument is without merit.

**IV. Recommendation**

For the foregoing reasons, I recommend that this case be REMANDED for the ALJ to properly consider Claimant's credibility. Also, I Recommend that Claimant's Motion for Summary Judgment be DENIED IN PART and that Commissioner's Motion for Summary Judgment be GRANTED IN PART because Claimant's statements alone are not enough to establish that there is a physical  impairment; the Appeals Council's explanation was adequate; Claimant's subsequent

award of disability is irrelevant to this case; and the ALJ determined that Claimant is limited to light work.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.   A copy of such objections should be submitted to the District Court Judge of Record.   Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: April 25, 2005

 /s/ James E. Seibert

JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE